**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LETRICIA LAVERN BROWN,<br>Plaintiff,<br>v.<br>THE STATE OF CALIFORNIA, et al.,<br>Defendants. | Case No. CV 23-1966 ODW (PVC)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |

This Report and Recommendation is submitted to the Honorable Otis D. Wright, II, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

**I.**

**INTRODUCTION**

On January 11, 2023, Plaintiff Letricia Lavern Brown, a California resident proceeding *pro se*, filed a civil action in the Superior Court of California for Los Angeles County. ("Complaint," Dkt. No. 1-2). On March 16, 2023, the case was removed to this Court pursuant to the Court's federal question jurisdiction. (Dkt. No. 1). Shortly thereafter, several Defendants filed motions to dismiss the Complaint. (*See, e.g.*, Dkt.

Nos. 14, 19, 24, 26, 30, 35). In lieu of opposing the motions, Plaintiff filed the operative First Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a). ("FAC," Dkt. No. 38).[1] The FAC is 221 pages long, not including more than 240 pages of exhibits, and appears to add forty-seven Defendants to the approximately forty-five Defendants named in the original Complaint, bringing the total to over ninety. (*See id*. at 4-5 (list of additional Defendants)).

Pending before the Court are ten Motions to Dismiss the FAC:[2]

1. <u>State of California</u>: MTD ("California MTD," Dkt. No. 77); Objection to California MTD (Dkt. No. 115); Reply (Dkt. No. 137).

2. <u>Superior Court of California, County of Los Angeles ("Superior Court")</u>:[3] MTD (Dkt. No. 50); Amended MTD ("Superior Court MTD," Dkt. No. 52); Request for Judicial Notice with Declaration of Lindsay N. Frazier-Krane (Dkt. No. 51); Objection to Superior Court MTD (Dkt. No. 109); Plaintiff's Notice of Errata (Dkt. No. 120); Exhibit 1 in Support of Objection (Dkt. No.

---

[1] The body of the First Amended Complaint is docketed at Dkt. Nos. 38, 38-1, and part of 38-2. The pages of the FAC are consecutively numbered across these three docket entries. Accordingly, the Court will adopt the FAC's internal pagination. The exhibits attached to the FAC are docketed at Dkt. Nos. 38-2, 38-3, and 38-4. The pages of the exhibits are not numbered consecutively. Accordingly, if necessary, when citing to an exhibit to the FAC, the Court will identify the specific docket number (*e.g.*, Dkt. No. 38-2) and the relevant CM/ECF-generated page number(s) for that docket number.

[2] Due to the quantity of filings and parties, for the sake of clarity and ease of reference, the Court will identify the moving party when citing to a particular motion to dismiss, (*e.g.* Ivy Park MTD), but will cite to all other filings related to that motion, such as declarations, exhibits, requests for judicial notice, objections, and reply briefs, etc., solely by docket number. Unless otherwise noted, citations to briefs will be to each document's internal pagination. Citations to exhibits and other documents will be to the CM/ECF-generated page numbers on the Court's docket.

[3] Superior Court of California, County of Los Angeles states that it was erroneously sued as Edmund D. Edelman Children's Court and Superior Court State of California. (Superior Court MTD at 1).

142); Reply (Dkt. No. 130).[4]

3. County of Los Angeles, Collins + Collins LLP, Rebecca J. Chmura (collectively, "Los Angeles County"):[5] MTD ("Los Angeles County MTD," Dkt. No. 146); Declaration of Rebecca J. Chmura (Dkt. No. 146-1); Request for Judicial Notice (Dkt. No. 146-2); Objection to Los Angeles County MTD (Dkt. No. 166); Exhibit 1 in Support of Objection (Dkt. No. 178); Exhibits 2, 3, 4 in Support of Objection (Dkt. No. 182); Reply (Dkt. No. 190); Plaintiff's Surreply (Dkt. No. 195); County's Objection to Surreply (Dkt. No. 196); Plaintiff's Reply to Objection to Surreply (Dkt. No. 198); Exhibit 4 [sic] in Support of Reply to Objection to Surreply (Dkt. No. 211); Notice of Errata re Dkt. No. 198 (Dkt. No. 212); County's Objection to Plaintiff's Reply to Objection to Surreply (Dkt. No. 208).[6]

---

[4] Plaintiff filed "motions to vacate" the Superior Court MTD, Riverside County MTD, and Ivy Park MTD. (Dkt. Nos. 117, 118 and 119). On May 8, 2023, the Court summarily denied the "motions to vacate" as procedurally improper and duplicative of Plaintiff's objections to the motions to dismiss. (Dkt. No. 140).

[5] Los Angeles County states on the caption of its MTD that it was erroneously sued as Los Angeles County Sheriff's Department, Los Angeles County Department of Children & Family Services, Los Angeles County Sheriff Department - Lomita Station, County of Los Angeles District Attorney Office, and Harbor UCLA Medical Center. (Los Angeles County MTD at 1). However, in the first paragraph of the MTD, Los Angeles County states that it was erroneously sued as County of Los Angeles Fire Department, County of Los Angeles District Attorney's Office, and Harbor UCLA Medical Center. (*Id*. at 2). This apparent confusion may reflect the difficulty of deciphering Plaintiff's allegations in the FAC.

The other responding Defendants joining in Los Angeles County's MTD, Collins + Collins LLP (erroneously sued as Collins Collins Muir + Stewart LLP) and Rebecca J. Chmura, were the County's law firm and lawyer in a Superior Court action brought by Plaintiff in 2018 against Los Angeles County and other defendants. (*Id*. at 24-25).

[6] Los Angeles County's objections to Plaintiff's surreplies are well taken. Pursuant to Local Rule 7-10, an opposing party may not file a response to a reply brief "[a]bsent prior written order of the Court, which Plaintiff did not request and was not granted. However, because the surreplies do not change the Court's recommendations, the Court declines to strike them or to grant Los Angeles County leave to file additional responses to Plaintiff's arguments.

4. County of Riverside:[7] MTD ("Riverside County MTD," Dkt. No. 73); Declaration of Nicole R. Roggeveen (Dkt. No. 73 at 13-16); Request for Judicial Notice (Dkt. No. 74); Amended Notice of Motion (Dkt. No. 76); Objection to Riverside County MTD (Dkt. No. 110); Exhibit 1 in support of Objection (Dkt. No. 131); Reply (Dkt. No. 138).

5. Palos Verdes Peninsula Unified School District:[8] MTD ("Palos Verdes Peninsula USD MTD," Dkt. No. 81); Declaration of George D. Tourkow (Dkt. No. 81-1); Objection to Palos Verdes Peninsula USD MTD (Dkt. No. 116); Reply (Dkt. No. 139).

6. South Central Los Angeles Regional Center for Developmentally Disabled Persons, Inc. ("SCLARC"):[9] MTD ("SCLARC MTD," Dkt. No. 89): Declaration of Megan J. Rutenberg (Dkt. No. 89-1); Objection to SCLARC MTD (Dkt. No. 132); Exhibit 1 in support of Objection to SCLARC MTD (Dkt. No. 143).

7. Las Vegas Metropolitan Police Department: MTD ("LVMPD MTD," Dkt. No. 251); Declaration of Dominique N. Thomas (Dkt. No. 251-1); Objection to LVMPD MTD, including Exhibits 1-6 (Dkt. No. 252); Exhibit 7 in support of Objection to LVMPD MTD (Dkt. No. 268).

---

[7] County of Riverside states that it was erroneously sued as Riverside County Sheriff's Department. (Riverside County MTD at 1).

[8] Palos Verdes Peninsula Unified School District states that it was erroneously sued as Pointe Vincente Elementary School. (Palos Verdes Peninsula MTD at 1).

[9] SCLARC states that it was erroneously sued as Southern California Los Angeles Regional Center. (SCLARC MTD at 1). According to SCLARC's website, "South Central Los Angeles Regional Center for Persons with Developmental Disabilities, Inc. (SCLARC) is a private, non-profit organization that is a comprehensive resource for evaluation, diagnosis, treatment, advocacy and support for people diagnosed with developmental disabilities." *See* https://sclarc.org/about-us.php.

8. Torrance Memorial Medical Center: MTD ("Torrance Memorial MTD," Dkt. No. 90); Declaration of Carley M. Ryckman (*id*. at 25-45); Request for Judicial Notice (Dkt. No. 90-1); Objection to Torrance Memorial MTD (Dkt. No. 133); Reply (Dkt. No. 141).

9. Exodus Recovery, Inc.: MTD ("Exodus MTD," Dkt. No. 150); Declaration of David Kneip (Dkt. No. 150-1); Declaration of Anthony V. Martinez (Dkt. No. 150-2); Objection to Exodus MTD (Dkt. No. 167); Reply (Dkt. No. 197).

10. Ivy Park, LLC: MTD ("Ivy Park MTD," Dkt. No. 42); Declaration of Keith L. Williams (Dkt. No. 42-1); Objection to Ivy Park MTD (Dkt. No. 91); Reply (Dkt. No. 111).

For purposes of this Report and Recommendation, the Court shall refer collectively to the ten Defendants that filed Motions to Dismiss as the "Moving Parties."

The FAC is patently frivolous and suffers from numerous additional fatal defects. Had this action been filed directly in this Court, it is likely that, based on the incurable deficiencies apparent on the face of Plaintiff's pleading, the undersigned would have recommended dismissal of this action even prior to service on Defendants. Accordingly, it is recommended that each of the above-listed Motions to Dismiss be GRANTED and that the claims in the FAC against the Moving Parties be dismissed with prejudice pursuant to Rule 8(a).[10] Furthermore, because the claims asserted against the scores of

[10] In the Los Angeles County MTD, Defendants Collins & Collins LLP and Rebecca J. Chmura move for an award of attorney's fees and costs against Plaintiff under the California anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16, and request that Plaintiff be deemed a vexatious litigant. (Los Angeles County MTD at 25-29). The Court will address those requests in a separate Report and Recommendation following the District Judge's ruling on the substance of the pending MTDs. *See, e.g., Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) (district court may impose sanctions after

Defendants who have not yet appeared suffer from the same or similar defects and are uniformly frivolous, it is recommended the claims against all remaining Defendants named in this action be dismissed without prejudice, but without leave to amend, for lack of jurisdiction.

## II.

## BACKGROUND FACTS AND PRIOR PROCEEDINGS[11]

Plaintiff states that she has been a Registered Nurse for over twenty years. (FAC at 134). She further states that she "owns and operates" two limited liability corporations, Angel of Life LLC and Angel Care Education & Associates LLC.[12] (*Id.*). Angel of Life

---

dismissal of action because "[i]t is well established that a federal court may consider collateral issues after an action is no longer pending"); *Emrit v. Centers for Medicare & Medicaid Servs.*, 2015 WL 13738601, at *3 (D. Nev. June 16, 2015), report and recommendation adopted, 2016 WL 164992 (D. Nev. Jan. 14, 2016) ("[T]his Court retains the inherent authority to issue orders on matters collateral to the merits of the underlying case [after dismissal of the case] and to conduct sanction proceedings and impose any sanction for abusive conduct authorized by the federal rules of procedure or federal statutes.").

[11] This "background" section attempts to summarize certain facts underlying Plaintiff's allegations that were not clearly pleaded, but knowledge of which appears to be assumed. Many of the facts in this section are taken from documents for which judicial notice was requested. "When ruling on a motion to dismiss, [a court] may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Colony Cove Properties, LLC v. City Of Carson*, 640 F.3d 948, 955 (9th Cir. 2011) (internal quotation marks omitted). "[N]otice may be taken where the fact is 'not subject to reasonable dispute,' either because it is 'generally known within the territorial jurisdiction,' or is 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Castillo-Villagra v. I.N.S.*, 972 F.2d 1017, 1026 (9th Cir. 1992) (quoting Fed. R. Evid. 201(b)). Courts are permitted to take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Intri-Plex Technologies, Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007). Because the documents for which judicial notice was requested are public records whose accuracy cannot be reasonably questioned, an in the absence of substantive opposition from Plaintiff, the requests for judicial notice filed by Superior Court (Dkt. No. 51), Riverside County (Dkt. No. 74), Torrance Memorial (Dkt. No. 90-1), and Los Angeles County (Dkt. No. 146-2) are GRANTED.

[12] According to the California Secretary of State website, Angel of Life LLC, agent Letricia Lavern Brown, was registered on February 9, 2012 and became inactive on October 1, 2020. Its status is listed as "suspended - FTB [Franchise Tax Board]." In addition, Angel Care Education & Associates LLC, agent Letricia Lavern Brown, was

did business as Dhelmar Care Home until it was closed allegedly as a result of its "devendorization" by SCLARC on May 22, 2018 and the subsequent loss of government funding. (*Id*. at 20-21; *see also* Dkt. No. 38-2 at 58). Plaintiff also formerly owned and operated an intermediate care facility called Developmentally Disabled Habilitative. (FAC at 134).

Plaintiff married named Defendant Steven Gumbus[13] in 2009, with whom she had a son, Elijah G., in 2011. (Dkt. No. 51 at 38). Plaintiff and Mr. Gumbus divorced in 2014, remarried in 2015, and divorced for a second time in 2017. (*Id*.). A family law court order gave Plaintiff full legal custody of Elijah at that time and accorded Mr. Gumbus joint physical custody, with visitation every other weekend. (*Id*.). On February 2, 2018, the Torrance Superior Court issued a three-year restraining order prohibiting Mr. Gumbus from contacting Plaintiff, or being within 100 yards of her or her home, with the exception of brief and peaceful contact required for court-ordered visitation. (*Id*. at 42 n.2).

On February 21, 2018, the Los Angeles County Department of Children and Family Services ("DCFS") filed a petition in a juvenile dependency action alleging that six-year old Elijah had been sexually abused by his 15-year old half-brother, Henry Wayne Thomas III, in December 2017. (Dkt. No. 51 at 37 (California Court of Appeal decision); *see also* Superior Court MTD at 2-3). The petition alleged that Plaintiff knew that Henry had sodomized Elijah before, but still allowed him unlimited, unsupervised access to Elijah. (Dkt. No. 51 at 37). Furthermore, DCFS maintained that Plaintiff had

---

registered on March 20, 2017 and became inactive on October 1, 2020. Its status is likewise listed as "suspended - FTB." The standing of each of these businesses with the FTB is designated as "not good." *See* https://bizfileonline.sos.ca.gov/search/business; *see also In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1024 (N.D. Cal. 2014) (court may take judicial notice of information on "publicly accessible websites" not subject to reasonable dispute).

[13] Mr. Gumbus has not appeared in this action.

"mental and emotional problems including depression, paranoia, aggressive and bizarre behavior," which rendered her unable to care for Elijah. (*Id.*). When DCFS went to Plaintiff's home on February 16, 2018 to serve an order removing Elijah, Plaintiff displayed "bizarre and aggressive behavior," which caused the deputy to inform her that she would be placed on a hospital hold under California Welfare & Institutions Code § 5150.[14] (*Id.* at 37, 40). Elijah was released to Mr. Gumbus. (*Id.* at 39). Mr. Gumbus told DCFS that he wanted full custody of Elijah, with monitored visitation for Plaintiff. (*Id.* at 38-39).

Plaintiff was taken directly to Torrance Memorial on February 16, 2018, where she was placed on a § 5150 hold. (*See, e.g.*, Torrance Memorial MTD at 24; FAC at 36). Plaintiff alleges that "for the purpose of continuing the 51/50 psychiatric hold, [she] was later transferred to Exodus Recovery Incorporation Urgent Care Center at MLK."[15] (FAC at 36). Plaintiff further alleges that she was discharged from Exodus Recovery on February 17, 2018. (*Id.* at 115).

Following her release from the § 5150 psychiatric hold, Plaintiff represented herself during subsequent custody proceedings. (Dkt. No. 51 at 40). Mr. Gumbus filed a parental notice of Indian status stating that Elijah might be eligible for membership in the Wichita tribe. (*Id.*). Plaintiff filed a parental notification of Indian status claiming Elijah's possible membership in the Cherokee tribe. (*Id.* at 41). Plaintiff claimed that Mr. Gumbus's temporary custody should be terminated because notice under the Indian

[14] California Welfare & Institutions Code § 5150 provides, in relevant part: "When a person, as a result of a mental health disorder, is a danger to others, or to themselves, or [is] gravely disabled, a peace officer," or specified medical professionals, "may, upon probable cause, take, or cause to be taken, the person into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention, or placement for evaluation and treatment in a facility designated by the county."

[15] Exodus Recovery's website states that its Urgent Care Center at MLK is a "24 Hour psychiatric crisis center" that provides mental health assessment services and therapeutic interventions, among other services. *See* https://www.exodusrecovery.com/urgent-care-center-mlk/.

Child Welfare Act (ICWA) was incomplete. (*Id.*). The court continued the proceedings so that the Indian tribes could be notified, but the tribes told the court that they did not consider Elijah to be an Indian child. (*Id.*). Plaintiff also argued that Mr. Gumbus was not Elijah's real father, but the court found that Mr. Gumbus was legally Elijah's "presumed father" because he was married to Plaintiff when Elijah was born and was named on the birth certificate as the father. (*Id*. at 43, 48-49). Plaintiff later claimed that Elijah was a member of the Creek Nation tribe, (*id*. at 45), but upon investigation, various Creek tribes reported that Elijah was not an Indian child. (*Id*. at 46). On August 30, 2018, the court found that Elijah was not an Indian child and granted Mr. Gumbus sole legal and physical custody. (*Id*. at 47). The custody order and final judgment were entered on September 11, 2018. (*Id.*). Plaintiff appealed the court's custody order to the California Court of Appeal, which denied the appeal in a written decision on October 22, 2019. (*Id*. at 36-51).

While custody proceedings were still pending, on May 10, 2018, Plaintiff filed an action in the Los Angeles County Superior Court, Case No. BC705956, against the State of California, the County of Los Angeles, Palos Verdes Peninsula Unified School District, and Torrance Memorial Medical Center, all of which are Defendants in the instant action. (*See* Dkt. No. 90-1 at 6-7). The First Amended Complaint in that case was filed on July 10, 2018. (Dkt. No. 146-2 at 6-51). Judge Michael L. Stern sustained the demurrers filed by those Defendants on November 21, 2018, and on January 29, 2019, dismissed the action with prejudice. (Dkt. No. 90-1 at 6-7). Plaintiff filed two appeals, both of which were dismissed for lack of jurisdiction because they were untimely filed. (Superior Court MTD at 2; *see also* Dkt. No. 51 at 69-89).

On August 26, 2020, an arrest warrant issued for Plaintiff's eldest son, Dareanté Scott Fischer, who was eventually charged with murder (Cal. Penal Code § 187(A)) and rape by force or fear (Cal. Penal Code § 261(A)(2)), among other offenses. (Riverside

County MTD at 6-7; *see also* Riverside County Superior Court Criminal Case Report, Case No. RIF2003062, Dkt. No. 74 at 4-5). Fischer was placed under arrest by the Corona Police Department shortly thereafter. (Riverside County MTD at 6-7; Dkt. No. 74 at 11). On February 4, 2022, the People filed a Notice of Intent to Seek the Death Penalty. (*Id*. at 10). A Third Amended Felony Complaint against Fischer was filed on March 8, 2023 and the matter is still ongoing. (*Id*. at 8).

On June 28, 2023, the Los Angeles County Superior Court, Family Division, issued an order affirming that Mr. Gumbus has primary physical custody of Elijah. (Dkt. No. 267, Exh. 1). Plaintiff was awarded unmonitored visitation every Saturday from noon to 4:00 p.m., and phone contact with Elijah every Monday and Wednesday for up to thirty minutes each day. (*Id*. at 1).

## III.

## ALLEGATIONS OF THE FIRST AMENDED COMPLAINT

Plaintiff's sprawling First Amended Complaint purports to sue scores of Defendants for a multitude of offenses arising from unrelated incidents. Because there does not appear to be any unifying thread or discernable organization to Plaintiff's often delusional allegations, it is impossible to prepare a coherent summary of the entirety of the FAC's claims. Under the most generous interpretation of the FAC, Plaintiff appears to allege in a stream-of-consciousness screed that Defendants -- including federal, state and local governmental entities and employees; public and private health care providers; judges and lawyers; movie studios; restaurants; former presidents Barack Obama and Donald Trump; and singer Beyoncé Knowles-Carter, among many, many others -- are engaged in a vast conspiracy to surveil and harm her. In addition to the injuries alleged against the Moving Parties described in Part V, Sections A-J below, Plaintiff alleges that:

- "The Defendant parties are using normal citizens of the United States of America, citizens from other countries, people, business' [sic] employees, business owners, law enforcement personnel, the paramedics, and Fire Departments to keep surveillance on me, stalk, harass me, attack me, and attempt to attack me, or block my movements. . . .They are using animals, insects, and birds; the citizens, people, business owners, and employees that have attached hidden cameras 'Nanny cameras' and hidden audio devices. They take photographs, and video surveillance of me."[16] (FAC at 124).
- Former President Trump and his niece, Ebony Gumbus, are stalking Plaintiff. (*Id.* at 17). "Donald Trump and Jean Rosse are the brother and sister of Ebony Gumbus['s] mom, and Ebony is their niece." (*Id.* at 132). Defendants sent Ebony Gumbus to have sex with Plaintiff's then-husband in an attempt to destroy Plaintiff's marriage; Ebony Gumbus "purposely did not use contraception" in order to have a child by Mr. Gumbus. (*Id.* at 259). Former President Barack Obama is also (somehow) "involved" in the "conspiracy of the parties." (*Id.* at 264).
- "The parties are doing Human Experimentation on me. They have enslaved me through devices in my body." (*Id.* at 121). The "devices" were "inserted through my vagina, cervix and urinary tract" to allow "the government to 'GPS' track my movements, harass, stalk, and execute me." (*Id.* at 122).
- The devices implanted by the United States and the State of California manifest an attempt to murder Plaintiff. (*Id.* at 17, 19, 122). The devices "move throughout my body, organs, and extremities causing swelling, pain, causes nose bleeding menorrhagia that is sometimes forceful projectile, and chest pain, and ear infection . . . I can feel the device moving in my body, ears, and eyes, with a feeling as if hundreds of insects are crawling around. I believe the feelings are smaller sand size pebbles the parties release from the main devices, to do certain functions like

[16] As further addressed below, many of Plaintiff's allegations are raised against "Defendants" or "the parties" collectively and without differentiation, and thus presumably include the Moving Parties.

suppress/occlude veins and arteries." (*Id*. at 123).

- The devices also are a means to learn and appropriate Plaintiff's thoughts. "United State of America, and the State of California implanted devices in my body that know my thoughts without me speaking them. These devices keep track of my location; cause injury, steal trade secrets from my thoughts, and steal inventions created in thought form. The parties are gathering evidence via my thoughts to win case [sic], by having foreknowledge of documents I will file, and strategies I use for oral and written argument." (*Id*. at 16-17).
- In an attempt to harm Plaintiff and her three sons, Elijah, Henry, and Dareanté, Defendants "have spread untrue rumors that I am, or was a 'gang member' that I possess the ability to know what an individual is thinking 'reads minds,' that I can murder someone with no action, merely by thought, that I can control air, wind, water, fire, lava, earthquakes, and all natural elements," all in order "to get strangers to hurt me 'hate crimes.'" (*Id*. at 202).
- Marvel Studios and Warner Brothers Production Studios have stolen Plaintiff's intellectual property by making movies depicting her life. (*Id*. at 144). "Billions of dollars in revenue and profits are coming to these organizations because of my popularity, fan base, and following," as people are "viewing my sex life, and bathing rituals, as a form of 'Free Pornography,'" which generates advertising revenue for the studios. (*Id*. at 146).
- Defendants have also used the media to disseminate Plaintiff's private health information protected under HIPAA. "Some of my health information appeared in a movie 'Night School' with actor Kevin Hart saying this violation in the script. The movie featuring Tiffany Haddish, is another entertainer that the parties advanced her career portraying roles, and character comedian depicting my life [sic]."
- Plaintiff's life is in "grave danger," as "[n]ot only have the parties tried to kill me, I have been raped, food poisoned with sedation/sleeping medication multiple times

from public restaurants. . . . The parties have murdered some witnesses, and people involved in the actions," including Plaintiff's ex-husband (and father to her son, Henry), Henry Wayne Thomas Jr.; Plaintiff's maternal aunt, Artelia Jones; Mr. Gumbus's stepfather, Dennis Bankroft; and Plaintiff's stepfather, William Brown, among others. (*Id*. at 133).

Plaintiff also claims that the following incidents, in addition to those alleged against the Moving Parties and other Defendants, underlie the claims in this case: a nurse at Glendale Memorial Medical Center assaulted Plaintiff in 2022 by ramming a dialysis machine into her left leg, ankle and foot (*id*. at 18); a masseuse at Relaxation Spot sexually assaulted Plaintiff in 2021 by placing her thumb into Plaintiff's anus during a full body massage (*id*.); Cloud Escrow unlawfully seized Plaintiff's real property in 2019 (*id*. at 19); a YMCA employee, using Plaintiff's membership records, broke into Plaintiff's home in 2019 and tried to smother her with a pillow in 2022 (*id*. at 18-19); a maintenance man at Plaintiff's apartment complex entered Plaintiff's apartment without prior notice of entry in 2018 (*id*. at 20); the FBI, CIA and the same YMCA employee mentioned above broke into Plaintiff's apartment in 2018 to destroy and steal her safe (*id*. at 24); Plaintiff's intermediate care facility was burgled in late 2016/early 2017 (*id*. at 23); registered nurses that Plaintiff hired in 2016 through AANE Consultants Registered "stole" documents from Plaintiff by copying them (*id*.); and from 2017 to the present, Apple has hacked into Plaintiff's cellular phones without a warrant. (*Id*. at 24).

By this action, Plaintiff seeks to have several state court orders vacated, the devices removed from her body, full custody of her minor son Elijah restored to her, compensation for pain and suffering, and a guarantee of "Asylum out of the country," among other remedies. (*Id*. at 221).

## IV.
## STANDARD

Dismissal under Rule 12(b)(6) for failure to state a claim is warranted if the plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a complaint "does not need detailed factual allegations," to survive review under Rule 12(b)(6), a showing of an entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires not only 'fair notice of the nature of the claim, but also grounds on which the claim rests.'" *Zixiang Li v. Kerry*, 710 F.3d 995, 998-99 (9th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556 n.3). Pursuant to Rule 8, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 may be violated when a pleading "says *too little*," and "when a pleading says *too much*." *Knapp v. Hogan*, 738 F.3d 1106, 1108 (9th Cir. 2013) (emphasis in original). A complaint violates Rule 8 if a defendant would have difficulty understanding and responding to the complaint. *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011). Accordingly, "[c]onclusory allegations that an indistinguishable group of defendants essentially engaged in identical misconduct . . . are insufficient to show that plaintiff is entitled to relief from any *individual* defendant." *Williams v. Cnty. of Los Angeles Dep't of Pub. Soc. Servs.*, 2016 WL 8730914, at *5 (C.D. Cal. May 2, 2016 ) (emphasis in original); *see also In re Sagent Tech., Inc., Derivative Litig.*, 278 F. Supp. 2d 1079, 1094 (N.D. Cal. 2003) ("[T]he complaint fails to

state a claim because plaintiffs do not indicate which individual defendant or defendants were responsible for which alleged wrongful act."); *Steinley v. Health Net, Inc.*, 2018 WL 6985318, at *5 (C.D. Cal. Dec. 4, 2018) ("Generally, '[u]ndifferentiated pleading against multiple defendants is improper' because it fails to give each defendant notice of the specific allegations and claims that pertain to it.") (quoting *Corazon v. Aurora Loan Servs. LLC*, 2011 WL 1740099, at * 4 (N.D. Cal. May 5, 2011)).

*Pro se* pleadings are "held to less stringent standards" than those drafted by a lawyer. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). However, even though the court must interpret a *pro se* complaint liberally and construe all material allegations of fact in the light most favorable to the plaintiff, *see Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010), the court does not have to accept as true mere legal conclusions. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Furthermore, in giving liberal interpretation to a *pro se* complaint, the court may not supply essential elements of a claim that were not initially pled. *Pena v. Gardner*, 976 F.2d 469, 471-72 (9th Cir. 1992).

Even where, as here, a plaintiff is not proceeding *in forma pauperis* and is not in custody, it is well settled that a federal court lacks subject matter jurisdiction to consider claims that are "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998) (citations and internal quotations omitted); *Hagans v. Lavine*, 415 U.S. 528, 537 (1974) (court lacks subject matter jurisdiction over claims that are "essentially fictitious," "obviously frivolous" or "obviously without merit"). When determining whether a complaint is frivolous, the court need not accept the allegations as true, but must "pierce the veil of the complaint's factual allegations," *Neitzke v. Williams*, 490 U.S. 319, 327 (1989), to determine whether they are "'fanciful,' 'fantastic,' [or] 'delusional.'" *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)

(quoting *Neitzke*, 490 U.S. at 328); *see also Newby v. Obama*, 681 F. Supp. 2d 53, 56 (D. D.C. 2010) (complaint alleging "bizarre conspiracy theory" relating to "alleged government surveillance and harassment" was frivolous and subject to dismissal for lack of subject matter jurisdiction) (internal quotation marks omitted).

As a general matter, even when a request to amend a defective complaint is not made, "[l]eave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts, and should be granted more liberally to *pro se* plaintiffs." *Lira v. Herrera*, 427 F.3d 1164, 1176 (9th Cir. 2005) (internal quotation marks omitted). However, "[u]nder Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved. Courts are not required to grant leave to amend if a complaint lacks merit entirely." *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc); *see also Mirmehdi v. United States*, 689 F.3d 975, 985 (9th Cir. 2012) ("[A] party is not entitled to an opportunity to amend his complaint if any potential amendment would be futile . . . ."); *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002) ("Because any amendment would be futile, there was no need to prolong the litigation by permitting further amendment."). The Court's "discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Cafasso*, 637 F.3d at 1058 (internal quotation marks omitted); *accord Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1116 (9th Cir. 2014); *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 879 (9th Cir. 1999).

## V.
## THE MOTIONS TO DISMISS

### A. <u>State of California MTD (Dkt. No. 77)</u>

In her statement of claims, Plaintiff alleges that the State of California

(1) negligently failed to enforce a child support order requiring her ex-husband, Steven Gumbus, to pay monthly support for their child Elijah (FAC at 81-85); (2) negligently monitored the South Central Los Angeles Regional Center (SCLARC), which failed to ensure that Francine Johnson, a patient in Plaintiff's facility, received psychological evaluation, services and interventions, as a result of which Johnson attacked and hit Plaintiff (*id*. at 89-90); and (3) interfered with Plaintiff's ability to run a business by cancelling monthly payments to a facility she operated.[17] (*Id*. at 146). Plaintiff asserts claims of conspiracy to child abduction, (*id*. at 81), negligence, professional negligence, "physical pain, mental suffering, and emotional distress," (*id*. at 81, 87), "unsafe patient care," dependent adult abuse, (*id*. at 87), lost profits, and lost earning capacity. (*Id*. at 87, 146). The State argues that (1) Plaintiff's claims are untimely, as this action was filed years after the statute of limitations expired (California MTD at 6-7); (2) the FAC fails to contain a short and plain statement of the claim showing that the pleader is entitled to relief" as required by Federal Rule of Civil Procedure 8(a)(2) (*id*. at 7-8); (3) the FAC does not allege a statute that supports any theory of liability against the State (*id*. at 9-10); and (4) the FAC's claims for damages against the State are barred by the Eleventh Amendment. (*Id*. at 10).

### B. <u>Superior Court MTD (Dkt. No. 50)</u>

Plaintiff seeks to hold the Superior Court vicariously liable for certain findings and orders issued against Plaintiff by Superior Court judges Carolyn B. Kuhl, Michael L. Stern, and Thomas Grodin, and Superior Court Commissioner Steff Padilla in the course of their adjudication of both Plaintiff's prior civil action against the State of California, the County of Los Angeles, Palos Verdes Peninsula USD, and Torrance Memorial (the

[17] As noted above, Plaintiff alleges several times in the FAC that the State of California inserted devices into her body. (*See, e.g.*, FAC at 19) ("November 2019 United States of America and the State of California attempted murder on me [sic] using implanted device [sic] suppressed respirations."). However, the FAC does not appear to assert those allegations as part of an express claim against the State.

"Civil Action," Los Angeles County Superior Court Case No. BC705956), and Elijah's custody proceedings (the "Dependency Proceedings," Los Angeles County Superior Court Case Nos. 18CCJP01150 and 18CCJP01150A).[18] Judge Kuhl improperly determined that Plaintiff's Civil Action was not "complex" and transferred the case to the Stanley Mosk Courthouse for reassignment. (FAC at 193). Superior Court failed to properly supervise Judge Stern in November 2018 when he ordered defense counsel to prepare a proposed ruling and order in Plaintiff's Civil Action. (*Id*. at 98-99). Plaintiff alleges that Superior Court wrongfully took physical and legal custody of Elijah away from her in August 2018 because under the Indian Child Welfare Act, the Court lacked jurisdiction over the matter. (*Id*. at 100-01). Among other remedies, Plaintiff seeks an order directing Judge Grodin and Commissioner Padilla to "VACATE all findings and orders on 2-22-18, 2-23-18, 5-3-18, 5-29-18 and 5-31-18" to detain Elijah and place him with Mr. Gumbus. (*Id*. at 107). Plaintiff alleges counts against Superior Court for negligence, professional negligence, "physical pain, mental suffering, and emotional distress," "lost profits," and "conspiracy to child abduction." (*Id*. at 98, 100).

Superior Court asserts multiple grounds for dismissal: (1) this Court lacks subject matter jurisdiction because Plaintiff's claims are *de facto* appeals of adverse state court decisions, prohibited by the *Rooker-Feldman* doctrine (Superior Court MTD at 7-9);[19] (2) Superior Court is entitled to absolute judicial immunity from suit (*id*. at 10-11); (3) Plaintiff's claims are barred by the doctrine of res judicata and the full faith and credit provisions of 28 U.S.C. § 1738 (*id*. at 11-12); (4) the Anti-Injunction Act prohibits a federal court from granting an injunction to stay proceedings in state court unless expressly authorized by 28 U.S.C. § 2283 (*id*. at 12-13); (5) the *Younger* abstention

---

[18] Plaintiff filed multiple appeals of the adverse decisions in the Civil Action and the Dependency Proceedings, all of which were unsuccessful. (*See* Superior Court MTD at 2-3).

[19] Citations are to the Superior Court's Amended Motion to Dismiss at Dkt. No. 52.

doctrine prohibits federal interference with pending state judicial proceedings, such as the State's placement of Elijah with Mr. Gumbus (*id*. at 14-15); (6) the FAC fails to comply with Rule 8(a) (*id*. at 16); (7) Plaintiff's claims fail to state a claim upon which relief can be granted (*id*. at 16-17); (8) Plaintiff failed to comply with the claim presentation requirements of the California Government Claims Act (*id*. at 17-18); (9) Plaintiff's claims for negligence and professional negligence fail to state a cause of action and are barred by the statute of limitations (*id*. at 18-20); (10) Plaintiff's alleged claims for "physical pain, mental suffering and emotional distress" are not a cognizable claim for which relief can be granted (*id*. at 20-21); (11) Plaintiff's claim for "lost profits" is a remedy, not a claim (*id*. at 21); (12) Plaintiff cannot recover damages because she failed to comply with the California Government Claims Act (*id*. at 21-23).

### C. Los Angeles County MTD (Dkt. No. 146)

Perhaps more than for any other Defendant, Plaintiff's factual allegations against Los Angeles County and its counsel in Plaintiff's state court Civil Action encompass numerous unrelated incidents, all but one of which occurred in 2018 or before. Plaintiff alleges that:

- Los Angeles County Sheriff's Department ("LASD") committed elder abuse and is liable for the wrongful death of a patient at Plaintiff's Dhelmar Care Home when they refused to take the patient to a hospital on April 8, 2017 (FAC at 40-42);
- the Department of Children and Family Services failed to protect Elijah by placing him with Mr. Gumbus on February 16, 2018 (*id*. at 44);
- LASD deputies used excessive force when they put Plaintiff on a § 5150 psychiatric hold on February 16, 2018 (*id*. at 35-36);
- LASD failed to enforce a restraining order against Mr. Gumbus and to arrest him on February 16, 2018 (*id*. at 36-37);

- Plaintiff's laptop was "confiscated" when Plaintiff was on a supervised visit at the Department of Children and Family Services on May 18, 2018, and 40 files -- Plaintiff's intellectual property -- were stolen (*id*. at 48);
- the County failed to file or prosecute charges for crimes committed against Plaintiff, her family, and "others similarly situated," despite the "many crime reports" Plaintiff has filed (*id*. at 46); and
- the County subjected Plaintiff to another unreasonable and unconstitutional § 5150 psychiatric hold on September 26, 2020 (*id*. at 38-40).

Plaintiff raises claims against the County for excessive force; "violation of federal civil rights -- in general" under 42 U.S.C. § 1983; "physical pain, mental suffering and emotional distress"; acts of violence under the Ralph Act, Cal. Civ. Code § 51.7; "local government liability -- policy or custom"; medical expenses; "damages for annoyance and discomfort -- trespass and nuisance" (FAC at 35); negligence and professional negligence (*id*. at 36); lost profits (*id*. at 38); wrongful death; elder abuse (*id*. at 40); lost earning capacity; past and future earnings (*id*. at 43); "local government liability"; constructive fraud; conspiracy to child abduction; use of fabricated evidence (*id*. at 44); and intellectual property theft (*id*. at 48).

The County argues that Plaintiff's claims should be dismissed because (1) Plaintiff fails to allege the elements of any cause of action, and many purported "causes of action" are not even recognized legal claims (Los Angeles County MTD at 15-16); (2) the FAC fails to comply with Rule 8 (*id*. at 16); (3) the claims against the County are barred by *res judicata* and collateral estoppel (*id*. at 17-18); (4) the claims are barred by the full faith and credit clause under 28 U.S.C. § 1738 (*id*. at 18); (5) this Court lacks jurisdiction under the *Rooker-Feldman* doctrine (*id*. at 18-19); (6) Plaintiff failed to comply with the California Government Claims Act (*id*. at 19-20); (7) Plaintiff fails to plead statutory claims against the County (*id*. at 20-21); and (8) the FAC's claims are barred by the

relevant statutes of limitation (*id*. at 21-23).

Plaintiff's allegations against Rebecca J. Chmura and her law firm, Collins & Collins LLP, are based on Chmura's preparation of a proposed order at the direction of Judge Stern as part of the firm's representation of the County in Plaintiff's 2018 Civil Action. (FAC at 29-30). Plaintiff raises claims against these two Defendants for constructive fraud, professional negligence, negligence, and "physical pain, mental suffering and emotional distress." (*Id*.). Chmura and Collins & Collins LLP argue that the claims against them should be dismissed because (1) the FAC fails to allege the elements of any cause of action, and many purported "causes of action" are not even recognized legal claims (Los Angeles County MTD at 15-16); (2) the FAC fails to comply with Rule 8 (*id*. at 16); (3) they are entitled to an absolute privilege from suit under the litigation privilege, which applies to any publication in a judicial proceeding (*id*. at 24) (citing Cal. Civ. Code § 47(b)); (4) Plaintiff's claims are an improper "SLAPP" against free speech and public participation subject to dismissal under California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16 (*id*. at 25-27); and (5) Plaintiff's claims are barred by the statute of limitations. (*Id*. at 27). Chmura and Collins & Collins LLP further contend that they should be awarded attorney's fees and costs under the anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16(c)(1) (*id*. at 26), and that Plaintiff should be declared a vexatious litigant under Cal. Civ. Proc. Code § 391. (*Id*. at 28-29).

**D. <u>Riverside County MTD (Dkt. No. 73)</u>**

Plaintiff contends that the Riverside County Sheriff's Department "falsely incarcerated, wrongfully accused and imprisoned" her eldest son, Dareanté Scott Fisher. (FAC at 119). According to Plaintiff, in "2017 or 2018," "[w]hile the parties were doing harmful things to me and following me, I'd written down license plate numbers of the cars following me," and gave the list of license plate numbers to Dareanté. (*Id*. at 121).

Plaintiff asserts that "the parties have detained Dareanté because he is a witness, just as they are hiding and withholding Elijah from me." (*Id*.). Plaintiff alleges claims for constructive fraud and "physical pain, mental suffering and emotional distress." (*Id*. at 119). Riverside County contends that the FAC should be dismissed because (1) Plaintiff has not alleged the elements of a claim for constructive fraud (Riverside County MTD at 6-7); (2) Plaintiff lacks standing to sue for wrongful imprisonment of her adult son, Dareanté, who is being held on felony charges of murder and rape (*id*.); (3) even if Plaintiff had standing to sue for wrongful imprisonment, the claim would be premature pursuant to *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), because the criminal proceeding has not yet terminated in Dareanté's favor and any potential conviction has not been invalidated (Riverside County MTD at 7); (4) pursuant to the *Younger* abstention doctrine announced in *Younger v. Harris*, 401 U.S. 37 (1971), a federal district court cannot enjoin an ongoing state criminal proceeding without a valid showing of "extraordinary circumstances" not present here (Riverside County MTD at 7-8); (5) Plaintiff's claims are barred by the statute of limitations (*id*. at 8); (6) Plaintiff has not presented her claims to Riverside County as required by the California Government Claims Act (*id*. at 8-9); (7) Plaintiff has not identified any statutory authority for imposing liability on the County. (*Id*. at 9).

### E. <u>Palos Verdes Peninsula USD MTD (Dkt. No. 81)</u>

Plaintiff complains that on February 16, 2018, Palos Verdes Peninsula Unified School District violated Elijah's civil rights and Plaintiff's educational rights by releasing Elijah to Steven Gumbus, who was not listed on Plaintiff's updated emergency contact list. (FAC at 70). Plaintiff further alleges that Elijah was wrongfully withdrawn and disenrolled from the school at the request of her husband. (*Id*. at 71). Plaintiff also claims that the District "retaliated" against her for filing complaints with the United States Department of Education, although she does not specify what the retaliation consisted of.

(*Id*. at 79). Plaintiff raises claims for negligence, professional negligence, "physical pain, mental suffering and emotional distress," "violation of federal civil rights -- in general," conspiracy to child abduction, constructive fraud and retaliation. (*Id*. at 67, 70-71, 79). Palos Verdes Peninsula USD contends that the FAC should be dismissed because (1) the FAC is "fatally confusing, ambiguous, and incomprehensible," in violation of Rule 8(a) (Palos Verdes Peninsula USD MTD at 6-7); (2) the FAC fails to allege the elements of any cause of action and would be untimely under any statute of limitations even if it had stated a claim (*id.* at 7-10); and (3) the FAC fails to allege compliance with the California Government Tort Claims Act. (*Id*. at 10-11).

### F. <u>SCLARC MTD (Dkt. No. 89)</u>

Plaintiff's allegations against South Central Los Angeles Regional Center appear to arise from a "vendor" relationship between SCLARC and Plaintiff's former intermediate care facility, Dhelmar Care Home. (FAC at 95-96, 168-185). SCLARC terminated its vendor relationship with Dhelmar in May 2018, which Plaintiff claims caused California to stop paying Medicaid funds to Plaintiff. (*Id*. at 171). Plaintiff also alleges that in October 2017, SCLARC participated in a "Patient Snatching" conspiracy to have a patient who was residing at Dhelmar Care Home discharged to another facility, which resulted in lost profits of $10,000 a month for Plaintiff. (*Id*. at 169). Additionally, Plaintiff contends that SCLARC was negligent in failing to provide services and/or interventions, which caused a "consumer" to attack her and others in May 2018. (*Id*. at 174). Plaintiff raises claims for negligence, "physical pain, mental suffering and emotional distress," whistleblower protection -- unsafe patient care and conditions, constructive fraud, lost profits, lost earning capacity and dependent adult abuse. (*Id*. at 168-69, 171). SCLARC argues that the FAC should be dismissed for violation of Rule 8(a) and for failure to state a claim, as the FAC's conclusory allegations do not state the elements of any cause of action against SCLARC. (SCLARC MTD at 9-10).

**G. <u>LVMPD MTD (Dkt. No. 251)</u>**

Plaintiff alleges that on December 8, 2022, the LVMPD failed to enforce a California-issued custody order in Las Vegas. (FAC at 113). Plaintiff states that she visited a LVMPD station, showed a law enforcement officer the order, and asked that an officer go to Mr. Gumbus's home to enforce the visitation order. (*Id*. at 113-14). Plaintiff was told that the LVMPD could not enforce a custody order only for visitation, but that Plaintiff could call 311 (a non-emergency police line) to request a welfare check. (*Id*. at 114). Plaintiff called 911 and was transferred to 311 and was put on hold for over an hour with no answer. (*Id*.). Plaintiff asserts claims for professional negligence, negligence, and conspiracy to child abduction. (*Id*. at 113). The LVMPD states that Plaintiff's claims must be dismissed because the Court lacks any traditional basis for personal jurisdiction over the LVMPD, which is a resident of the state of Nevada. (LVMPD MTD at 6-7). Furthermore, the LVMPD does not have systematic or continuous contact with California, and as such, the Court lacks "general" or "specific" personal jurisdiction over the LVMPD. (*Id*. at 7). The LVMPD also contends that Plaintiff fails to state a cause of action against it under Rule 12(b)(6) because she does not allege facts to support the elements of a cause of action for negligence or any other claim against the LVMPD. (*Id*. at 9-10).

**H. <u>Torrance Memorial MTD (Dkt. No. 90)</u>**

Plaintiff alleges that on February 16, 2018, Torrance Memorial Medical Center held her on an "illegal" § 5150 psychiatric hold. (FAC at 21, 61). She asserts that she was restrained against her will and wanted to sign out "Against Medical Advice (AMA)," but was not permitted to do so, which caused her severe emotional distress. (*Id*. at 61). Plaintiff also claims that Torrance Memorial confiscated her purse and failed to treat her

complaints of chest pain.[20] (*Id*. at 21). Plaintiff alleges claims of "physical pain, mental suffering and emotional distress," negligence, professional negligence, excessive force, medical malpractice and "violation of federal civil rights -- in general." (FAC at 61). Torrance Memorial argues that Plaintiff's claims are barred (1) by the doctrine of claim preclusion[21] (Torrance Memorial MTD at 12-16) and the statute of limitations (*id*. at 16-18); (2) for lack of subject matter jurisdiction, as the claims are "fantastic conspiracy theories" utterly devoid of merit (*id*. at 16-21); (3) for failure to state a claim, as the § 5150 hold was imposed by a police officer, not Torrance Memorial (*id*. at 21-23); and (4) because California Welfare and Institutions Code § 5278 provides blanket immunity to entities and persons authorized to detain and evaluate a hold under § 5150 so long as the decision is supported by probable cause. (*Id*. at 23-25).

**I. <u>Exodus MTD (Dkt. No. 150)</u>**

Plaintiff alleges that as a condition of her release from her psychiatric § 5150 hold at Exodus, she was forced to sign a "Patient Notification of Firearms Prohibition and Right to Hearing." (FAC at 115). According to Plaintiff, even though she was wrongfully placed on a § 5150 hold, Exodus informed her that "they" must take away her right to bear arms and she could not be discharged without signing the form. (*Id*.). Plaintiff asserts counts of excessive force/unreasonable arrest, deprivation of Second Amendment right to bear arms, "lost earning capacity," and "past and future wages." (*Id*.). Exodus moves to

---

[20] In addition, Plaintiff elsewhere vaguely alleges that in October 2017, Torrance Memorial "conspired" with SCLARC to divert a patient who was residing at an intermediate care facility Plaintiff operated to another facility. (FAC at 63-64).

[21] Torrance Memorial expressly notes that Plaintiff previously raised claims against it arising from the same incident in Plaintiff's Civil Action, which was filed in the Los Angeles County Superior Court on May 10, 2018. (Torrance Memorial MTD at 10). The Superior Court sustained Torrance Memorial's demurrer on the merits and entered judgment dismissing the action with prejudice on January 29, 2019. (*Id*. at 11) (citing Dkt. No. 90-1, Exh. 1).

dismiss the FAC for violation of Rule 8, or, in the alternative, for a more definite statement under Rule 12(e). (Exodus MTD at 4-6). Exodus also contends that Plaintiff's Second Amendment claim should be dismissed pursuant to Rule 12(b)(6) because the FAC fails to plead sufficient facts to show how Exodus violated Plaintiff's constitutional rights. (*Id*. at 6-7). Finally, Exodus maintains that Plaintiff's excessive force/ unreasonable arrest claim under the Fourth Amendment fails because there are no factual allegations showing that Exodus arrested Plaintiff or used any kind of force against her. (*Id*. at 7-8). Exodus also argues that Plaintiff's constitutional claims fail because Exodus is a private entity, not a governmental agency. (*Id*.). Furthermore, because Plaintiff's claims stem from the way she was treated or discharged from psychiatric care in 2018, her claims are all untimely. (*Id*. at 8-10) (citing, *inter alia*, Cal. Civ. Proc. Code § 340.5).

### J. <u>Ivy Park MTD (Dkt. No. 42)</u>

Ivy Park is a clothing company owned by Beyoncé Knowles-Carter. (FAC at 138). Plaintiff summarily alleges that the company "took my fashion concepts I'd written, and displayed in outings of using workout gear and accessorizing for everyday use, and not just for workouts. Ivy Park started making the tight fitting clothing that look like work out 'gymnasium' clothing, and accessorizing with high heeled boots, and etcetera [sic]. The stealing of my fashion concepts, and inventions, has led to lost profits, and lost earning capacity." (*Id*.). Plaintiff alleges claims for intellectual property theft, constructive fraud, lost profits, and lost earning capacity. (*Id*.). Ivy Park asserts that the FAC should be dismissed because it (1) is "fatally confused, ambiguous and incomprehensible," in violation of Rule 8(a) (Ivy Park MTD at 14-15), (2) fails to state a cognizable claim for conspiracy, copyright infringement, or fraud (*id.* at 16-20), and (3) the claims for "lost profits" and "lost earning capacity" are not causes of action, but rather, remedies. (*Id*. at 20-21). Additionally, Ivy Park claims that the FAC's sporadic allegations concerning Ms. Knowles-Carter cannot be imputed to Ivy Park because the

actions alleged -- Ms. Knowles-Carter's alleged efforts to infiltrate Plaintiff's family, to enslave Plaintiff through secret messages in songs played on Pandora, and to capitalize off Plaintiff's dance moves, singing, and fashion concepts -- were not taken within the scope of Ms. Knowles-Carter's role at Ivy Park. (*Id*. at 21).

## VI.
## DISCUSSION

The defenses raised by the Moving Parties in their respective MTDs are uniformly meritorious and any one of them could separately provide a ground for dismissal of the FAC. However, Plaintiff's egregious violation of the pleading rules set forth in Federal Rule of Civil Procedure 8 is sufficient, by itself, to warrant granting the Moving Parties' MTDs and dismissing the FAC without leave to amend. The Court will nonetheless address some, but not all, of the FAC's other incurable pleading defects simply to further illustrate the FAC's frivolousness. Accordingly, the Court will address Rule 8 globally, followed by an analysis of a limited number of dispositive defenses as alternative grounds for dismissal of Plaintiff's claims against the Moving Parties.

### A. The FAC Fails To Comply With Federal Rule Of Civil Procedure 8

Federal Rule of Civil Procedure 8(a) provides in relevant part that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Rule 8(d) similarly states that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d). "A complaint which fails to comply with rules 8(a) and [8(d)] may be dismissed with prejudice pursuant to rule 41(b)."[22] *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671,

[22] Rule 41(b) provides: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any

673 (9th Cir. 1981) (citing *Schmidt v. Herrmann*, 614 F.2d 1221 (9th Cir. 1980)). The Ninth Circuit instructs that even though dismissal is a harsh penalty and is to be imposed only in extreme circumstances, *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986), "[i]t is clear . . . that aggravated circumstances may make dismissal with prejudice under Rule 41(b) appropriate." *Nevijel*, 651 F.2d at 674. Furthermore, "dismissal on Rule 8(a) grounds does not require that the complaint be wholly without merit." *Gottschalk v. City & Cnty. of San Francisco*, 964 F. Supp. 2d 1147, 1154 (N.D. Cal. 2013) (citing *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996)). This case presents an extreme and aggravated circumstance under which dismissal with prejudice for failure to comply with Rule 8 is fully warranted.

Even under the most generous reading possible, the FAC is little more than a delusional, paranoid tirade cataloguing seemingly every random injury that Plaintiff imagines she suffered during an inchoate period. The Moving Parties repeatedly -- and justifiably -- emphasize that the FAC violates Rule 8 and fails to put them on notice of what Plaintiff's often fantastic claims against them might be. (*See, e.g.*, California MTD at 8 ("It is unclear what specific claims are being asserted against which defendants. The FAC is rambling and incomprehensible and includes implausible claims . . . ."); Superior Court MTD at 24 ("The instant FAC is 221-pages with an additional 244 pages of exhibits that contain allegations regarding human experimentation, implantation of devices within plaintiff's body used to track and monitor her, attempts to poison and execute her, murder of third parties, and an alleged conspiracy based solely upon plaintiff's unfounded allegations without reference to any discernable *facts*." (emphasis in original)); Los Angeles County MTD at 17 (citing examples of the "fictional tall-tales [Plaintiff] details in her FAC" while noting Plaintiff's "long track record of filing unorganized, ambiguous, and unformatted pleadings"); Palos Verdes Peninsula USD MTD at 6-7 ("Plaintiff's FAC

---

dismissal not under this rule -- except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 -- operates as an adjudication on the merits." Fed. R. Civ. P. 41(b).

is over 220 pages long, has no discernable organization, and wholly eschew norms of grammar and punctuation, making Plaintiff's allegations extremely difficult to follow. Additionally, Plaintiff's stream-of-consciousness style makes parsing causes of action and connecting them to any relevant factual allegations, purported legal bases, or individual Defendants, nearly impossible."); SCLARC MTD at 7 ("Although Plaintiff does indicate causes of action against SCLARC specifically, the clarity stops there. . . . It is difficult to clearly connect Plaintiff's causes of action to the facts she alleges."); LVMPD MTD at 9 (the FAC "does not provide specific facts for each cause of action and combines all of [Plaintiff's] allegations"); Exodus MTD at 5 (noting that the FAC appears to name 92 Defendants and makes no clear connection between Plaintiff's assertion that Exodus "prohibits me from barring [sic] arms" and any other allegations); Ivy Park MTD at 14 ("Plaintiff's jumbled, 221-page rant makes it impossible for Ivy Park to determine (1) the scope of the causes of action Plaintiff purports to bring against each Defendant, (2) the legal bases for Plaintiff's claims, (3) what facts allegedly support each cause of action, and (4) what remedies Plaintiff seeks in connection with those causes of action.")). The Moving Parties' contentions are well supported.

In her objections to the MTDs, Plaintiff frequently asserts that she did in fact raise causes of action against Defendants. (*See, e.g.*, Dkt. No. 115 at 1-2 (California); Dkt. No. 109 at 1-2 (Superior Court); Dkt. No. 116 at 1 (Palos Verdes Peninsula USD); Dkt. No. 132 at 1-2 (SCLARC); Dkt. No. 167 at 2 (Exodus)). The caption of the FAC lists over twenty-five purported causes of action untethered to any particular Defendant. (FAC at 1). Many of these so-called causes of action do not identify cognizable claims at all, such as "physical pain," "lost profits," "lost earning capacity, "writ of certiorari," "local government liability -- policy or custom," "damages for annoyance and discomfort," etc. (*Id.*). However, even the causes of action that are potentially legally cognizable amply demonstrate, by themselves, the utter incoherence of this action. As the caption discloses, Plaintiff attempts to bring under one action unrelated claims for intellectual property theft,

defamation, medical malpractice, excessive force, slander of title, breach of contract, elder abuse, etc. Furthermore, while Plaintiff does attempt in the body of the FAC to list causes of action (whether cognizable or not) by name against each Defendant, the factual allegations following the checklist of claims generally make no attempt to track the elements of a cause of action. As such, even when Plaintiff's factual averments can be deciphered, Defendants must still guess whether any particular alleged act supports any particular cause of action. Despite having had the opportunity to amend her original Complaint, Plaintiff appears to believe that simply listing causes of action (or imagined causes of action) by name suffices to "state a claim" against a Defendant. It obviously does not.

Furthermore, the FAC is replete with broad accusations that "the parties" or "Defendants" collectively committed some wrong, without any attempt to distinguish which of the over ninety Defendants may have participated in the wrongful act, and sometimes affirmatively stating that all Defendants were engaged in a particular conspiracy. (*See, e.g.*, FAC at 33 ("[T]he parties are illegally watching me bath[e] nude, and my sexual life via 'Nanny Cameras.' This act was a direct result of the parties being sexually attracted to me."); *id*. at 51 ("Mr. Gumbus is in conspiracy with all the parties."); *id*. at 103 ("Nonetheless, the minor [Elijah] is a witness in this case, and I believe the parties are all in conspiracy to hide minor, and withhold visitation in fear that minor will testify, talk, or 'snitch.'"); *id*. at 121 ("THE PARTIES HAVE OBSTRICIZED [sic] ME AND ISOLATED ME FROM MOST OF THE PEOPLE I LOVE, MY FRIENDS AND FAMILY MEMBERS.") (capitalization in original); *id*. at 125 ("The parties threaten the livelihood and employment of any person who disobeys this 'Order' of this regime that has terrorized the citizens of the United States, the Continents, and world abroad. One example the Social Security Administration decreased my mother Elouise Brown's Social Security monthly payments by half, when they found out that she served documents for me."); *id*. at 144 ("The parties stalk, lure, and wait for me prior to my arrival, based on my

thoughts of destinations where I will go."); *id*. at 153 ("**I believe this guy [a bar patron who allegedly threatened to physically harm Plaintiff] was sent to me by Steven Gumbus and all the parties sued.**") (emphasis in original); *id*. at 155 ("After the '***ASSAULTS and removal of minor from the home***', the parties have escalated there [sic] tactics to deter, scare, put fear in me in pursuing charges being brought against my son Henry Thomas III, and sue them [sic].") (emphasis in original); *id*. at 166 ("**I believe there are personal relations amongst all defendant parties, along with Steven Gumbus, my son Henry Thomas III, my sister Karon Brown, and my brother Christopher Jones. There has [sic] been several acts/incidents involving the parties sued that has [sic] been professionally negligent, unprofessional, and possibly criminal in nature.**") (emphasis in original); *id*. at 201-02 ("The Defendants in their efforts to 'Obstruct Justice", and win the case against them [sic], and sway the audience, community, potential jurors, Electoral College, Executive, Legislative, and Judicial, Municipal officials, and sway the (12)-twelve United States Supreme Court Justices to side with them [sic]. Their intent is to cause detrimental harm to me, and my (3)-three sons minor [Elijah], Dareanté, and Henry . . . .")). Therefore, even if the FAC appears to implicate a particular Defendant in a particular wrongful act in one part of the FAC, no Defendant can be entirely certain that Plaintiff is not also trying to allege a claim against it in the myriad references to "the parties" and "Defendants" in the collective elsewhere throughout the FAC.

Dismissal for failure to comply with Rule 8 is proper where "the very prolixity of the complaint made it difficult to determine just what circumstances were supposed to have given rise to the various causes of action." *McHenry*, 84 F.3d at 1178; *see also Nevijel*, 651 F.2d at 674; *Schmidt*, 614 F.2d at 1224. The Ninth Circuit has recognized the formidable harms pleadings such as the FAC impose on defendants, the Court, and the administration of justice in other cases:

> Prolix, confusing complaints such as the ones plaintiffs filed in this case impose unfair burdens on litigants and judges. As a practical matter, the judge and opposing counsel, in order to perform their responsibilities, cannot use a complaint such as the one plaintiffs filed, and must prepare outlines to determine who is being sued for what. Defendants are then put at risk that their outline differs from the judge's, that plaintiffs will surprise them with something new at trial which they reasonably did not understand to be in the case at all, and that res judicata effects of settlement or judgment will be different from what they reasonably expected. "[T]he rights of the defendants to be free from costly and harassing litigation must be considered." [*Von Poppenheim v. Portland Boxing & Wrestling Comm'n*, 442 F.2d 1047, 1054 (9th Cir. 1971)].
>
> The judge wastes half a day in chambers preparing the "short and plain statement" which Rule 8 obligated plaintiffs to submit. He then must manage the litigation without knowing what claims are made against whom. This leads to discovery disputes and lengthy trials, prejudicing litigants in other cases who follow the rules, as well as defendants in the case in which the prolix pleading is filed. "[T]he rights of litigants awaiting their turns to have other matters resolved must be considered . . . ." *Nevijel*, 651 F.2d at 675; *Von Poppenheim*, 442 F.2d at 1054. While commendable in its consideration for plaintiffs in this case, the magistrate's thorough analysis and thirty-page report, and the judge's study of the report, took a great deal of time away from more deserving litigants waiting in line.

*McHenry*, 84 F.3d at 1179-80; *see also In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1554 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Avakian v. Wells Fargo Bank*, N.A., 827 Fed. Appx. 765, 766 (9th Cir. 2020) ("A complaint is not a

puzzle, however, and we are loathe to allow plaintiffs to tax defendants, against whom they have levelled very serious charges, with the burden of solving puzzles in addition to the burden of formulating an answer to their complaint."); *Cafasso*, 637 F.3d at 1059 ("Our district courts are busy enough without having to penetrate a tome approaching the magnitude of *War and Peace* to discern a plaintiff's claims and allegations."); *Gottschalk v. City & Cnty. Of San Francisco*, 964 F. Supp. 2d 1147, 1155-60 (N.D. Cal. 2013) (dismissing complaint with prejudice for incomprehensibility).

All of the harms identified by the *McHenry* Court arising from pleadings that grossly violate Rule 8 are present in this case. Further amendment would be futile, as evidenced by the fact that the First Amended Complaint doubled the number of Defendants sued and increased the length of Plaintiff's pleading by over a third, without any improvement in the clarity or coherence of Plaintiff's allegations. Furthermore, in light of the fantastic nature of Plaintiff's claims and the additional incurable defects noted below, there is simply no foundation upon which a cognizable claim could conceivably be built from the facts alleged. Accordingly, it is recommended that the Moving Parties' MTDs be uniformly granted and that the FAC be dismissed in its entirety without leave to amend.

**B. <u>Plaintiff's Claims Against The State Of California, Los Angeles County, Palos Verdes Peninsula USD, SCLARC, Torrance Memorial, And Exodus Are Barred By The Statute Of Limitations</u>**

**1. State Of California, Los Angeles County, Palos Verdes Peninsula USD**

The State of California, the County of Los Angeles, and Palos Verdes Peninsula Unified School District are all government agencies entitled to the protections of the

California Government Claims Act ("CGCA"), Cal. Gov't Code § 900 *et seq*. for state law causes of action for damages.[23] Under the CGCA, an injured party may not bring an action for damages against a public entity or employee unless she first presents a written claim to the appropriate governmental agency within six months of the accrual of the action. *See Mabe v. San Bernardino Cnty., Dept. of Public Social Services*, 237 F.3d 1101, 1111 (9th Cir. 2001) (CGCA requires the "timely presentation of a written claim and the rejection of the claim in whole or in part" as a condition precedent to filing suit); *see also* Cal. Gov't Code § 945.4 ("[N]o suit for money or damages may be brought against a public entity . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board . . . ."). Any suit must be commenced no later than six months after the date a notice of rejection of the claim is personally delivered or deposited in the mail. *Id*. §§ 913, 945.6(a)(1). If written notice of rejection of claim is not given in accordance with Government Code § 913, suit must be filed within two years after the cause of action accrued. *Id*. § 945.6(a)(2).

---

[23] The CGCA's "filing requirement does not apply to either non-pecuniary actions such as injunctive, specific, or declaratory relief, or causes of action based upon federal law. *Robinson v. Alameda Cnty*., 875 F. Supp. 2d 1029, 1044 (N.D. Cal. 2012) (citing *Canova v. Trustees of Imperial Irrigation District Employee Pension Plan*, 150 Cal. App. 4th 1487, 1493 (2007)). Even if Plaintiff were to seek injunctive relief against these Moving Parties, however, compliance with the CGCA's claims presentation requirement is still required if she "also seeks monetary damages that are not incidental to the relief sought." *Robinson*, 875 F. Supp. 2d at 1045 (citing *Lozada v. City & Cnty. of San Francisco*, 145 Cal. App. 4th 1139, 1146-47 (2006)).

Plaintiff does include in the FAC a rather long digression in which she purports to seek an "INTERLOCULATORY [sic] INJUNCTION/PERLIMINARY [sic] INJUNCTION" against the State of California for its alleged failure to protect Plaintiff from "the Defendant Parties and Steven Gumbus." (FAC at 150-167). While compliance with the CGCA's claims presentation requirements is not required for claims for injunctive relief, this request, to the extent it can be deciphered, fails for other reasons. The vast majority of the acts complained of were committed by LASD deputies, not state officials, and all of the acts complained of occurred in 2018. Accordingly, the State does not appear to have the authority to provide whatever protective action Plaintiff may be seeking against County actors, and any claim based on incidents that occurred in 2018 are plainly untimely. Additionally, as the Court will address further below, the Eleventh Amendment generally bars private suits for damages or injunctive relief against states in federal court. *See Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty*., 343 F.3d 1036, 1040 (9th Cir. 2003).

A plaintiff must affirmatively allege compliance with the CGCA's claims presentation requirement in the complaint or explain why compliance should be excused. *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995); *see also State v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1245 (2004) ("[F]ailure to allege compliance or circumstances excusing compliance with the claim presentation requirement [of the CGCA] subjects a complaint to a general demurrer for failure to state facts sufficient to constitute a cause of action."). Furthermore, the failure to exhaust a state law claim subject to the CGCA "is a jurisdictional, not a procedural, defect. Thus, instead of abating an action as premature, a trial court must grant summary judgment and dismiss the suit upon a finding that a party has not exhausted his or her administrative remedies." *Miller v. United Airlines, Inc.*, 174 Cal. App. 3d 878, 890 (1985); *see also Cornejo v. Lightbourne*, 220 Cal. App. 4th 932, 938 (2013) ("Ordinarily, filing a claim with a public entity pursuant to the Claims Act is a jurisdictional element of any cause of action for damages against the public entity . . . .").

Plaintiff asserts that she filed claims against the State of California with the Government Claims Program on March 14, 2018, May 4, 2018, June 20, 2018, and July 26, 2018. (*Id*. at 117). Plaintiff further alleges that because she did not receive a response to the claims, the claims were deemed denied forty-five days after they were filed. (*Id*. at 118). Plaintiff states that she filed claims with the Los Angeles County "Sheriff's Headquarter Bureau" [sic] on February 24, 2018 and April 5, 2018. (*Id*. at 117). She also purportedly filed claims with the County of Los Angeles Executive Board of Supervisors on June 20, 2018; the Los Angeles County Department of Children and Family Services on April 5, 2018; and Los Angeles County Public Social Services on April 5, 2018. (*Id*. at 117-18). Plaintiff appears to assert that she did not receive responses to any of her claims on the County.[24] (*Id*. at 118). Finally, Plaintiff asserts that she served claims on the Palos

---

[24] The Court makes no finding as to whether Plaintiff's claims served on various Los Angeles County agencies were addressed to the proper entity.

Verdes Peninsula USD on March 16, 2018 and April 10, 2018. (*Id*. at 117). She states that she received a written rejection to those claims dated April 25, 2018, in which she was expressly notified that she had only six months within which to file a court action. (*Id*. at 118).

For purposes of this Report and Recommendation only, the Court will assume that the claims Plaintiff submitted to the State of California, the County of Los Angeles, and the Palos Verdes Peninsula USD encompassed all of her claims in the instant action and somehow did not accrue until the date she submitted them. The Court will also assume that even though the FAC does not identify a statutory basis for her claims against these entities, statutes could be cited for at least some of her claims.[25] However, even with these very generous (and unlikely) assumptions, Plaintiff's claims against these entities are patently untimely. Because Plaintiff asserts that she did not receive a response to her claims from the State or Los Angeles County, the statute of limitations extended to two years after the cause of action accrued, which, as noted above, the Court will assume was the date she submitted her claims. Plaintiff states that she submitted her last CGCA claim to the State on July 26, 2018. As such, the statute of limitations would have run on July 26, 2020. The last CGCA claim submitted to any Los Angeles County agency appears to have been dated June 20, 2018. As such, the statute of limitations would have run on June 20, 2020. Plaintiff states that she actually received a written rejection from Palos Verdes Peninsula USD on April 25, 2018, in which case the statute of limitations would have run six months later, on October 25, 2018. Plaintiff did not file the instant action in state court until January 11, 2023. (*See generally* Dkt. No. 1-2). Therefore, even giving Plaintiff the benefit of every possible favorable assumption, her claims against the State of California and Los Angeles County are untimely by almost two and a half years, and her claims against Palos Verdes Peninsula USD is untimely by over five years. Accordingly,

---

[25] Under state law, public entities in California are immune from liability except as provided by statute. Cal. Gov't Code § 815(a).

Plaintiff's claims against the State of California, the County of Los Angeles, and Palos Verdes Unified School District should be dismissed without leave to amend as untimely.[26]

### 2. SCLARC, Torrance Memorial, Exodus

SCLARC, Torrance Memorial and Exodus are private institutions and as such, Plaintiff's claims against them are not subject to the constraints of the CGCA. However, Plaintiff's claims against the SCLARC arise from the alleged termination of SCLARC's "vendor relationship" with Dhelmar Care Home in 2018 and SCLARC's alleged failure to provide patient care in 2017 and 2018. (FAC at 95-96, 171-185). Plaintiff's claims against Torrance Memorial arise from her § 5150 psychiatric hold on February 16, 2018 and from a purported "patient snatching" incident in October 2017. (*Id*. at 21, 61, 63-65). Plaintiff's claims against Exodus also relate to her treatment and discharge from the same February 2018 § 5150 psychiatric hold. (*Id*. at 115). Any possible statute of limitation for claims against these Defendants based on these incidents had already long lapsed by the time Plaintiff filed this action in state court on January 11, 2023.

---

[26] Plaintiff does not appear to have alleged elsewhere in the FAC that she submitted any other CGCA claims to the State or Los Angeles County. Therefore, to the extent that Plaintiff attempts to claim that the FAC includes claims based on other, more recent incidents, such as her second § 5150 psychiatric hold on September 26, 2020, (*see* FAC at 38-40), the Court lacks jurisdiction either because Plaintiff did not exhaust her claims or because she did not affirmatively plead exhaustion. (*See* Los Angeles County MTD at 20) (contending that Plaintiff did not file a claim with the County relating to the September 26, 2020 § 5150 psychiatric hold).

The State did not address its timeliness arguments in terms of the statutes of limitation for any particular cause of action, but instead focused solely on the time limitations in the CGCA. (California MTD at 6-7). The County, in contrast, addressed Plaintiff's failure to comply with the CGCA deadlines separately from the claim-specific statutes of limitations, which it also addressed. (Los Angeles County MTD at 20-23). California courts have found that claims against government entities must satisfy both statutes of limitation, with claim-specific statutes of limitation constituting an outer limit on when a claim may be brought. *See, e.g.*, *Roberts v. County of Los Angeles*, 175 Cal. App. 4th 474, 486-87 (2009) (claim filed within six-month CGCA deadline due to tolling but beyond the three-year statute of limitation for that claim was untimely). Here, because there is no question that Plaintiff failed to file the instant suit within the CGCA deadlines, the Court declines to address in detail whether the claims were filed within the outer limits of particular statutes of limitations, except to note that no matter how the claims are construed, they were not filed within any applicable statute of limitation.

Plaintiff alleges that SCLARC was negligent in terminating its vendor relationship with Plaintiff on May 22, 2018. (SCLARC MTD at 8) (citing FAC at 171). Plaintiff asserts that the termination of the vendor relationship was retaliation for her purported earlier whistleblowing activities related to SCLARC's alleged failure to provide adequate care to certain patients. (SCLARC MTD at 8) (citing FAC at 175). California's statute of limitation for negligence actions is two years. (Cal. Civ. Proc. Code § 335.1). Although Plaintiff does not specifically identify the statute under which she brings her whistleblower claim, the Court will assume, without deciding, that the statute of limitations for the claim is provided by California Civil Procedure Code § 338(a), which provides a three-year statute of limitations for "[a]n action upon a liability created by statute, other than a penalty or forfeiture." Cal. Civ. Proc. Code § 338(a); (*see also* SCLARC MTD at 8). Under California law, "[a] cause of action accrues when the claim is complete with all of its elements," which "ordinarily occurs on the date of the plaintiff's injury . . . ." *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1054 (9th Cir. 2008) (quoting *Slovensky v. Friedman*, 142 Cal. App. 4th 1518, 1528 (2006), as modified). Accordingly, Plaintiff's claims against SCLARC expired on May 22, 2021 at the latest -- more than a year and a half before she brought this suit.

Plaintiff's most recent claims against Torrance Memorial and Exodus arose from her § 5150 psychiatric detention on February 16, 2018 (Torrance Memorial) and February 17, 2018 (Exodus). (*See* FAC at 21). Accordingly, the provisions of the Medical Injury Compensation Reform Act ("MICRA"), Cal. Civ. Proc. Code § 340.5, apply. *See Arroyo v. Plosay*, 225 Cal. App. 4th 279, 297 (2014) ("'[C]ourts have broadly construed 'professional negligence' [under MICRA] to mean negligence occurring during the rendering of services for which the health care provider is licensed.'") (quoting *Canister v. Emergency Ambulance Service, Inc.*, 160 Cal. App. 4th 388, 406-407 (2008); brackets in original). Section 340.5 prescribes a three-year limitations period commencing after the date of injury or a one-year limitations period after the plaintiff discovers, or through

the use of reasonable diligence should have discovered, the injury, "whichever occurs first." Cal. Civ. Proc. Code § 340.5. Plaintiff asserts without explanation in her objection to Torrance Memorial's MTD that "she did not fully discovery the injuries and there [sic] cause until approximately, August 2022." (Dkt. No. 133 at 2). Plaintiff gives no facts to support her assertion, which is both incredible and irrelevant. Under MICRA, at the outside, Plaintiff had an absolute limit of three years to bring any claim arising from her February 2018 psychiatric hold. Therefore, her claims against Torrance Memorial and Exodus expired in February 2021, almost two years before she filed the instant action in January 2023.[27]

Plaintiff's claims against SCLARC, Torrance Memorial and Exodus seek damages for injuries that occurred in 2017 and 2018, well outside any possible statute of limitations. Accordingly, her claims against these Moving Parties should also be dismissed without leave to amend as untimely.

### C. <u>Plaintiff's Claims Against The State Of California Are Barred By The Eleventh Amendment</u>

Plaintiff's state law claims, timely or not, against the State of California are barred by the Eleventh Amendment. The Ninth Circuit instructs that even though "[i]t is true that California has waived its sovereign immunity for tort actions" pursuant to the CGCA in state court, "[a] state's waiver of sovereign immunity in its own courts does not effect a waiver of its eleventh amendment immunity in the federal courts." *BV Engineering v.*

[27] The incident underlying Plaintiff's "patient snatching" claim against Torrance Memorial occurred in October 2017 and appears to have involved SCLARC's alleged transfer of a patient from Plaintiff's care at Dhelmar Care Home to another facility after the patient was taken to Torrance Memorial for dialysis treatment. (FAC at 64). Plaintiff does not allege any facts that coherently give rise to liability on Torrance Memorial's part in connection with the incident, (*see id*. at 63-65), but even if she had, her negligence claims, however construed, would have expired before her claims related to her February 2018 psychiatric hold.

*University of California, Los Angeles*, 858 F.2d 1394, 1396 (9th Cir. 1988); *Gonzalez v. California Highway Patrol*, 2021 WL 3287717, at *4 (E.D. Cal. Aug. 2, 2021) (recognizing that California's waiver of sovereign immunity under the CGCA "'does not . . . constitute a waiver of eleventh amendment immunity'") (quoting *BV Engineering*, 858 F.2d at 1396). Eleventh Amendment immunity thus constitutes an alternate and sufficient ground to dismiss Plaintiff's claims against the State of California without leave to amend.

### D. Plaintiff's Claims Against Collins & Collins LLP and Rebecca J. Chmura Are Barred By The Litigation Privilege

Plaintiff raises state law claims against Collins & Collins LLP and Rebecca J. Chmura, counsel for the County of Los Angeles in Plaintiff's 2018 Superior Court Civil Action, for constructive fraud, professional negligence, "vicarious liability" negligence, and "physical pain, mental suffering and emotional distress." (FAC at 29-30). These so-called "claims" appear to be based on Ms. Chmura's preparation of a proposed order for use in the Civil Action at the direction of Judge Stern. (*Id*. at 29-32). Substantively, the claims are irredeemably frivolous and untimely. Even if they were not, they are barred by California's litigation privilege. *See* Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). The privilege confers an absolute bar to suit for any publication made in any judicial proceeding, with certain exceptions not relevant here. Cal. Civ. Code §47(b), as amended; *see also GeneThera, Inc. v. Troy & Gould Pro. Corp.*, 171 Cal. App. 4th 901, 909 (2009) ("The privilege is absolute, 'not because we desire to protect the shady practitioner, but because we do not want the honest one to have to be concerned with [subsequent derivative] actions . . . .'") (quoting *Silberg v. Anderson*, 50 Cal. 3d 205, 214 (1990); brackets and ellipses in original). It applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or

logical relation to the action." *Taylor v. Quall*, 458 F. Supp. 2d 1065, 1067 (C.D. Cal. 2006) (quoting *Olszewski v. Scripps Health*, 30 Cal. 4th 798, 830 (2003)). The preparation of a proposed order at the behest of a judicial officer is undeniably a "communication with 'some relation' to judicial proceedings," and is therefore "absolutely immune from tort liability" under state law. *GeneThera*, 171 Cal. App. 4th at 909 (quoting *Rubin v. Green*, 4 Cal. 4th 1187, 1193 (1993)). Accordingly, Plaintiff's claims against Collins & Collins LLP and Rebecca J. Chmura should be dismissed without leave to amend pursuant to the litigation privilege.

### E. **The FAC's Claims Against The Los Angeles County Superior Court Are Barred By The Doctrine Of Absolute Judicial Immunity**

Plaintiff's claims against the Superior Court of California, Los Angeles County, arise from adverse decisions issued in the course of Plaintiff's Civil Action and Dependency Proceedings by judges and commissioners acting in their judicial capacity. However, judges are absolutely immune from suit for purported violations arising from judicial acts taken within the jurisdiction of their courts. *See Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) ("Judges and those performing judge-like functions are absolutely immune from damage liability for acts performed in their official capacities."). "A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors," *Stump v. Sparkman*, 435 U.S. 349, 359 (1978), or by "allegations of bad faith or malice." *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

The "broad doctrine of judicial immunity" also covers the Superior Court of California for actions taken by its judges. *Reis v. D'Braunstein*, 2008 WL 11342704, at *2 (C.D. Cal. Dec. 15, 2008); *see also Lynn v. Friedenthal*, 2011 WL 836456, at *8 (C.D. Cal. Feb. 9, 2011), report and recommendation adopted, 2011 WL 863865 (C.D. Cal. Mar.

8, 2011) ("The principle for judicial immunity is the same for both the Superior Court and Commissioner Friedenthal, *i.e.*, so that a judicial officer, in exercising the authority vested in him, can act upon his own conviction, without apprehension of personal consequences."); *Hallmark Care Servs. v. Superior Court of Wash. for Spokane Cnty*., 2019 WL 2718500, at *5 (E.D. Wash. June 28, 2019) (Spokane County Superior Court and Spokane County, acting through their judges and commissioners, were entitled to judicial immunity), aff'd, 809 F. App'x 435, 436 (9th Cir. 2020). Because all of Plaintiff's claims against Superior Court derive from the judicial acts of Los Angeles County judges and commissioners, Plaintiff's claims against Superior Court should be dismissed without leave to amend on the ground of absolute judicial immunity.

### F. <u>Plaintiff Lacks Standing To Sue Riverside County For The Wrongful Imprisonment Of Her Son And Any Such Claim Would Fail Under Federal And State Law</u>

Plaintiff raises two claims against Riverside County, for "constructive fraud" and "physical pain, mental suffering and emotional distress," both based on the false arrest and continued incarceration of her son, Dareanté, on charges of murder and rape in 2017.[28] (FAC at 119-21). However, Plaintiff does not have standing to bring a claim based on the false imprisonment of her adult son, over whom she does not have legal

[28] Plaintiff alleges as part of a request for a preliminary injunction against the State of California that she gave a copy of the TRO against Mr. Gumbus to the Riverside County Sheriff's Department on February 7, 2018. (FAC at 151). She admits that RCSD Deputy Cosmano attempted to serve the TRO on February 8, 2018, but was unable to effect service because Mr. Gumbus was not home. (*Id*.). However, nowhere in her claim against Riverside County in the FAC does Plaintiff attempt to state a cause of action against the County for the purported failure to serve the TRO. (FAC at 119-21). Plaintiff attempts to argue in her objections to Riverside County's MTD that the County's failure to serve the TRO on Mr. Gumbus caused her "physical pain, mental suffering, and emotional distress," (Dkt. No. 110 at 2), but even the most generous reading of the FAC would not include a claim against Riverside County on that ground. Even if she had asserted such a claim, and even if Plaintiff had identified a statute giving rise to the County's liability, which she did not, the claim accrued in February 2018 and would be barred by any conceivable statute of limitations.

custody or guardianship. Even if she did have standing, because the criminal proceedings have not yet terminated in Dareanté's favor, any claim of false imprisonment in a federal civil rights action would be barred by the doctrine in *Heck v. Humphrey*, 512 U.S. 477 (1994). Any state law claim would be barred by Plaintiff's failure to comply with the CGCA as to Riverside County.

A plaintiff generally does not have standing to bring a claim based on the rights of third parties. *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). Nonetheless, a party may sue in a representative capacity as provided "by the law of the state where the court is located . . . ." Fed. R. Civ. P. 17(b)(3). Under California Civil Procedure Code § 372, a guardian or guardian ad litem may pursue a claim on behalf of a minor or a person who lacks legal capacity to make decisions. However, Plaintiff alleges in the FAC that Dareanté is twenty-six years old, (FAC at 119), and there is no allegation that he has been declared incompetent. To the contrary, Plaintiff expressly alleges that Dareanté is an accomplished young man with many honors and awards. (*Id*. at 120). Accordingly, Plaintiff does not have standing to sue Riverside County for damages on the ground that Dareanté is being falsely imprisoned while he awaits trial.

Even if Plaintiff could sue Riverside County for Dareanté's false imprisonment, the claim would be premature. Plaintiff claims that Dareanté is being held by "the parties" on false charges to keep him from divulging the identities of persons who are stalking and doing "harmful things" to her. (FAC at 121). In *Heck v. Humphrey*, the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a Section 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared

invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. 477, 486-487 (1994). Here, the criminal proceedings against Dareanté have not yet been resolved, and as such, any claim for damages arising from his false imprisonment or malicious prosecution are premature. *See, e.g.*, *McDonough v. Smith*, 139 S. Ct. 2149, 2158 (2019) (claims challenging the integrity of criminal prosecutions undertaken pursuant to legal process do not accrue prior to favorable termination of the prosecution because "[o]nly once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of *Heck* . . . will the statute of limitations begin to run").

Finally, to the extent that Plaintiff is attempting to assert any state law causes of action against Riverside County, the claims are barred by Plaintiff's failure to comply with the claims presentation requirement of the CGCA. Although Plaintiff alleges that she submitted a number of government claims to various public entities, she does not allege that she presented a claim to Riverside County. (*See* FAC at 116-19). In her objections to the Riverside County MTD, Plaintiff copies the FAC's recitation of her government claim filings. (*Compare* FAC at 116-19 *with* Dkt. No. 110 at 4-6). However, she makes no attempt to explain why a submission to the State of California or Los Angeles County would satisfy the CGCA's claims presentation requirement as to Riverside County. Accordingly, because Plaintiff lacks standing to bring her false imprisonment-based claims against Riverside County and such claims would fail under both federal and state law, Plaintiff's claims against Riverside County should be dismissed without leave to amend.

### G. <u>This Court Lacks Jurisdiction Over The Las Vegas Metropolitan Police Department</u>

Plaintiff alleges that in December 2022, the LVMPD failed to enforce a California-

issued custody order in Las Vegas.[29] (FAC at 113-15). However, this Court lacks personal jurisdiction over the LVMPD, and as such, Plaintiff's claims cannot be heard in this Court.

Federal Rule of Civil Procedure 12(b)(2) permits a court to dismiss a matter for "lack of jurisdiction over the person." When a defendant moves to dismiss for lack of personal jurisdiction, the Plaintiff bears the burden of making a "prima facie showing of jurisdictional facts" to show that the court has jurisdiction over the defendant. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). A court may exercise personal jurisdiction over a nonresident defendant consistently with due process only so long as there exist "minimum contacts" between the defendant and the forum, such that maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations and quotations omitted). Personal jurisdiction may be either general or specific. *See Helicopteros Nacionales De Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8 & 9 (1984). A defendant is present "generally" in the forum when its activities in the state are "substantial" or "continuous and systematic." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). Where general jurisdiction does not exist, the Ninth Circuit has established a three-factor test that examines: "[1] the defendant's purposeful conduct towards the forum, [2] the relation between his conduct and the cause of action asserted against him, and [3] the reasonableness of the exercise of jurisdiction." *SEC v. Ross*, 504 F.3d at 1138; *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1205-06 (9th Cir. 2006). Specific jurisdiction typically exists where the claim for relief arises directly from defendant's contacts with the forum state. *See AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

---

[29] Plaintiff's claims against the LVMPD in the FAC appear limited to an incident that occurred in December 2022. (FAC at 113-15). However, in Plaintiff's objections to the LVMPD's MTD, Plaintiff confusingly complains at length about purported wrongs by the LVMPD in July 2023, after the FAC and the LVMPD's MTD were filed. (*See* Dkt. No. 252 at 3-5).

Plaintiff's nearly incomprehensible objection to the LVMPD's MTD appears, at least in part, to make the nonsensical argument that this Court somehow has personal jurisdiction over the LVMPD because Plaintiff personally traveled to Las Vegas and requested the LVMPD's assistance. (Dkt. No. 252 at 2-4). This contention fails. This Court does not have general jurisdiction over the LVMPD because the LVMPD does not engage in "substantial" or "continuous and systematic" activities *in California*. Furthermore, because Plaintiff's claims arise out of the LVMPD's acts or failures to act *in Nevada*, there is no basis for specific jurisdiction. Accordingly, Plaintiff's claims against the LVMPD should be dismissed without leave to amend for lack of personal jurisdiction. *See Williams v. Clark Cnty. Pub. Adm'r*, 2009 WL 10675184, at *2 (C.D. Cal. Apr. 28, 2009) (finding that the Central District of California lacks general or specific jurisdiction over claims against Clark County and the LVMPD).

**H. <u>Ivy Park</u>**

Plaintiff devotes just four sentences of the FAC to her claims against Ivy Park, the company owned by Beyoncé Knowles-Carter, for "intellectual property theft" (presumably copyright infringement), constructive fraud, "lost profits" and "lost earning capacity." (FAC at 138). Plaintiff's broad allegations -- without any specific factual support -- summarily assert that Ms. Knowles-Carter took Plaintiff's fashion ideas regarding workout clothing for everyday use, and that Ivy Park made products pursuant to those designs, whatever they may have been. (*Id.*). These delusional, unsupported allegations fail to state a claim. Plaintiff does not allege that she registered any copyright with the Copyright Office, or that she ever "fixed" her "fashion concepts" in any copyrightable format. (*See* Ivy Park MTD at 18). Nor does Plaintiff allege any facts establishing that Ivy Park ever created any substantially similar clothing designs. (*Id.* at 19). There is simply nothing in Plaintiff's allegations that shows what Plaintiff's "intellectual property" was or that Ivy Park appropriated it. Similarly, Plaintiff fails to

allege that Ivy Park had any fiduciary or confidential relationship with Plaintiff, an essential element of constructive fraud. *See Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1131 (2014). "Lost profits" and "lost earning capacity" are not cognizable claims. All of Plaintiff's claims against Ivy Park are unsupported fantastical assertions that do not state a cognizable claim. Accordingly, Plaintiff's claims against Ivy Park should be dismissed without leave to amend for failure to state a claim under Rule 12(b)(6).

## I. Defendants Who Have Not Yet Been Served Or Appeared

The Moving Parties are just ten of the ninety-two Defendants named in this action. However, many of the unserved Defendants are employees of the Moving Parties and are thus entitled to the same statute of limitations, immunity, and jurisdictional defenses that barred Plaintiff's claims against the Moving Parties.[30] Furthermore, claims against any unserved Defendants -- whether or not they are employees of the Moving Parties -- that arise from Plaintiff's 2018 Civil Action or the 2018 Dependency Proceedings are barred by the statute of limitations and the *Rooker-Feldman* doctrine. Under the *Rooker-Feldman* doctrine, "a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court." *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003); *see Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). As the Ninth Circuit has explained,

> In its routine application, the *Rooker–Feldman* doctrine is exceedingly easy. A party disappointed by a decision of a state court may seek reversal

[30] By way of example only, in addition to suing Palos Verdes Peninsula USD, Plaintiff sues the District's Superintendent, Don Austin; Mr. Austin's daughter, Jessica Austin; Principal Beth Hadley; and Teachers Carla Vestal, Ms. Vichea, and Liz Warner. (FAC at 7, 67-80). None of these individual Defendants has appeared. The pattern of suing both the entity and the entity's employees is repeated for nearly all of the Moving Parties.

> of that decision by appealing to a higher state court. A party disappointed by a decision of the highest state court in which a decision may be had may seek reversal of that decision by appealing to the United States Supreme Court. In neither case may the disappointed party appeal to a federal district court, even if a federal question is present or if there is diversity of citizenship between the parties.

*Noel*, 341 F.3d at 1155. Accordingly, any effort to assert a claim that would have the effect of reversing a state court decision in the Civil Action or the Dependency Proceedings is barred by the *Rooker-Feldman* doctrine.

Any remaining claims against any unserved Defendants not encompassed by the categories above are irredeemably frivolous. The factual allegations supporting Plaintiff's intellectual property theft claim against "Apple Incorporation [sic]" are illustrative:

> My electronic devices, computers, and cellular phone have all been hacked, contents stolen/deleted, pictures erased while I am looking at them. My telephones have wire taps, there are "nanny cameras", and audio recordings in my apartments, and homes obtaining audio, and visual without my permission [sic].

(FAC at 143-44). Furthermore, as outlined above, Plaintiff purports to sue the United States for implanting devices in her, multiple movie studios for making movies about her life, various restaurants, two ex-presidents, and many other persons and entities for utterly fantastical reasons.

The Court has reviewed the FAC in painstaking detail and is unable to find a credible, non-frivolous factual assertion that could give rise to a plausible, cognizable

claim. A federal court lacks jurisdiction to consider claims that are "essentially fictitious," "obviously frivolous," or "obviously without merit." *Hagans*, 415 U.S. at 537. Thus, a "claim may be dismissed for want of subject-matter jurisdiction if it is not colorable" or if it "is 'wholly insubstantial and frivolous.'" *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 n.10 (2006) (citations omitted); *see also Shapiro v. McManus*, 577 U.S. 39, 45 (2015) (insubstantiality for jurisdictional purposes "has been equated with such concepts as 'essentially fictitious,' 'wholly insubstantial,' 'obviously frivolous'"); *Tr. v. Am. Honda Fin. Corp.*, 2016 WL 756461, at *2 (C.D. Cal. Feb. 25, 2016) ("A federal claim which is so insubstantial as to be patently without merit cannot serve as the basis for federal jurisdiction."); *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) ("[A] district court may, at any time, sua sponte, dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion."); *Myers v. Wake*, 2022 WL 19638240, at *1 (D. Ariz. Aug. 4, 2022), aff'd, 2023 WL 3092450 (9th Cir. Apr. 26, 2023) (dismissing "wholly frivolous" complaint *sua sponte* for lack of jurisdiction) (citing *Neitzke*, 490 U.S. at 327 n.6 (courts lack subject matter jurisdiction to consider "patently insubstantial" complaints). Despite amending her Complaint, Plaintiff has failed to state a colorable claim under any law against any Defendant. Accordingly, the claims against the Defendants who have not appeared should be dismissed for lack of jurisdiction over fundamentally frivolous claims.[31]

---

[31] The Court notes that the claims against the great majority of the Defendants who have not yet appeared could be subject to dismissal pursuant to Federal Rule of Civil Procedure 4(m), which provides for mandatory dismissal of defendants who have not been served within 90 days after the complaint is filed. In cases removed from state court, the 90-day clock begins to run on the date of removal. *See Wickersham v. Washington*, 2014 WL 3846094, at *2 (W.D. Wash. Aug. 5, 2014) ("In an action removed from state court, the [90]–day period to serve process runs from the date of removal to federal court, rather than the date the action was filed in state court."); *see also Whidbee v. Pierce Cnty.*, 857 F.3d 1019, 1023-24 (9th Cir. 2017) (under Rule 4(m), "once a case is removed to federal court, a plaintiff has a specified number of days to effect service of process"); *Vasquez v. North County Transit Dist.*, 292 F.3d 1049, 1053 (9th Cir. 2002) ("After removal, the city neglected to perfect service against the Board within [90] days as required by 28 U.S.C.

## VII.

## RECOMMENDATION

For the foregoing reasons, it is recommended that the Court issue an Order (1) accepting this Report and Recommendation; (2) granting the Motions to Dismiss the First Amended Complaint filed by the State of California (Dkt. No. 77); the Superior Court of California, County of Los Angeles (Dkt. No. 50); the County of Los Angeles, Collins & Collins LLP and Rebecca J. Chmura (Dkt. No. 146); the County of Riverside (Dkt. No. 73); Palos Verdes Peninsula Unified School District (Dkt. No. 81); South Central Regional Center for Developmentally Disabled Persons (Dkt. No. 89); Las Vegas Metropolitan Police Department (Dkt. No. 251); Torrance Memorial Medical Center (Dkt. No. 90); Exodus Recovery (Dkt. No. 150); and Ivy Park, LLC (Dkt. No. 42), and dismissing the claims against these Moving Parties with prejudice for violation of Rule 8(a); (3) dismissing the claims against all remaining Defendants named in the First Amended Complaint without prejudice, but without leave to amend, for lack of jurisdiction due to the frivolousness of Plaintiff's claims; and (4) entering judgment against Plaintiff and for Defendants.

DATED: August 21, 2023

PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE

---

§ 1448 and [Rule] 4(m).”). This case was removed on March 16, 2023, and consequently, the 90-day service period expired on June 14, 2023. However, the Court does not recommend dismissal under Rule 4(m) because Plaintiff's claims are uniformly frivolous and it is not in the interest of justice to incentivize Plaintiff to serve the meritless FAC on more than 80 additional Defendants.